UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TOGETHER CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>TRANSFORM CREDIT INC., d/b/a TOGETHER LOANS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-00388-CMS |

**<u>MEMORANDUM AND ORDER</u>**

Before the Court is Defendant Transform Credit Inc.'s Partial Motion to Dismiss Plaintiff's Petition (Doc. 9). For the reasons explained below, the Motion will be granted in part and denied in part.

**BACKGROUND**

**I. Factual Background**

Plaintiff Together Credit Union's Petition brings six counts: Improper Appropriation of Domain Name/Cybersquatting (Count I), Unfair Competition (Count II), Trademark Infringement under the Lanham Act (Count III), Trademark Dilution under the Lanham Act (Count IV), Trademark Infringement under Missouri Revised Statutes Section 417.056 (Count V), and Trademark Dilution under Missouri Revised Statutes Section 417.061 (Count VI). The following allegations from Plaintiff's Petition are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

Plaintiff has been operating as a credit union since 1939. (Doc. 1-1 ¶¶ 1, 6). Plaintiff is based in St. Louis but operates its business nationwide. *Id.* In 2020, it registered two "TOGETHER CREDIT UNION" service marks with the U.S. Patent and Trademark Office (the "Marks"). (Doc.

1-1 ¶¶ 2, 6–8). Plaintiff also owns the internet domain "togethercu.org" and has operated that website since 2019 to promote and provide its services. *Id.* ¶ 6. Plaintiff also has a phone app for its services. *Id.* ¶ 9. Plaintiff has used the Marks continuously and publicly to promote and sell its services [and] has invested large sums of money . . . [to promote] its business . . . via nationwide campaigns." *Id.* ¶ 9. It has supported its Marks with extensive advertising and built "substantial goodwill" using the Marks. *Id.* ¶¶ 25, 26.

Meanwhile, Defendant has operated as "Together Loans" in the St. Louis area and nationwide since 2025 and offers "predatory high-interest loans." *Id.* ¶¶ 3, 12–14. The Petition alleges that Defendant "maliciously and unfairly" competes with Plaintiff using Plaintiff's Marks, or a phrase confusingly similar to Plaintiff's Marks, in providing loans and other financial products and services in the same geographic markets, including the St. Louis area. *Id.* ¶¶ 3, 16, 28. Defendant operates its business through "togetherloans.com" and a "Together Loans" phone app to "redirect online customers from Plaintiff to Defendant in an illicit attempt to compete with Plaintiff." *Id.* ¶¶ 3, 15, 28. Defendant uses the Marks, or a phrase confusingly similar to the Marks, to attract and mislead consumers "into thinking that Defendant is Plaintiff, or is associated with Plaintiff, or that Defendant can provide Plaintiff's services associated with the Marks." *Id.* ¶ 32.

Plaintiff has received hundreds of angry phone calls from consumers confusing Plaintiff for Defendant. *Id.* ¶¶ 4, 18. Plaintiff also has received numerous loan applications from non-members who do not meet Plaintiff's loan criteria. *Id.* ¶ 4. When Plaintiff rejects their applications, the non-members become angry and threaten litigation based on Defendant's promises that everyone will be approved. *Id.* Plaintiff has been the subject of at least one complaint to the Better Business Bureau related to Defendant's actions. *Id.* Plaintiff alleges its reputation and goodwill

have been damaged by Defendant's use of Plaintiff's Marks or a phrase confusingly similar to the Marks. *Id.* ¶ 5.

Plaintiff has informed Defendant of the problematic and infringing usage of the Marks, but Defendant has refused to stop using the Marks. *Id.* ¶ 30. Customers continue to confuse Plaintiff and Defendant, and Plaintiff continues to be harmed by Defendant's actions. *Id.* Plaintiff has lost customers, revenue, and goodwill and has expended "significant sums of money" because of Defendant's actions. *Id.* ¶ 33.

**II. Procedural Background**

On February 9, 2026, Plaintiff filed its Petition in the Circuit Court of St. Louis County. (Doc. 1-1). On March 18, 2026, Defendant filed its Notice of Removal in this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (Doc. 1).

On March 25, 2026, Defendant filed its Motion to Dismiss with prejudice Plaintiff's Counts I, IV, V, and VI. (Doc. 9). Defendant argues: (1) Count I fails to plead the elements of a claim pursuant to the Anticybersquatting Consumer Protection Act; (2) Count IV contains only legal conclusions; and (3) Counts V and VI fail to plead that Plaintiff filed its trademarks in Missouri as required by the applicable Missouri statutes. (Doc. 10 at 1–2). Plaintiff opposes Defendant's Motion to Dismiss, (Doc. 11), and Defendant has filed a Reply, (Doc. 12).

**LEGAL STANDARDS**

**I. Motion to Dismiss**

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice of . . . the claim . . . and the grounds upon which it rests." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted); Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is "entitled to present evidence in support of his claim." *Id.*

When analyzing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken*, 140 F.4th at 450. That said, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The Court's analysis is context specific and "requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**DISCUSSION**

**I. Count I**

In Count I, Plaintiff claims "Defendant has acquired, used, registered, trafficked in and/or used the offending domain for improper purposes in violation of the Anticybersquatting Consumer Protection Act [(ACPA)]." (Doc. 1-1 ¶ 39). Plaintiff supports its claim with specific allegations: "Defendant has acted with bad faith and intent to profit from the offending domain" because the Marks "are federally registered and nationally known"; "Defendant covertly . . . used the Marks"; the domain "includes the Marks . . . in a manner which clearly refers to Plaintiff"; "Defendant uses the Marks as though they belong to Plaintiff"; "Defendant had no reasonable basis to believe that

its use of the domain name would be fair use or otherwise lawful"; and Defendant has done so with "actual knowledge that Plaintiff does not permit its usage of the Marks . . . ." *Id.* ¶¶ 37–39.

To state a claim under the ACPA, a plaintiff must allege, "without regard to the goods or services of the parties," the defendant: (1) "has a bad faith intent to profit from [a] mark . . ."; and (2) "registers, traffics in, or uses a domain name that": (a) "in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark" or (b) "in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . ." 15 U.S.C. § 1125(d)(1)(A). The ACPA provides nine non-exclusive factors to determine whether a party has acted with bad faith intent:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional

> failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

*Coca-Cola Co. v. Purdy*, 382 F.3d 774, 785 (8th Cir. 2004) (citing 15 U.S.C. § 1125(d)(1)(B)(i)). "The first four factors have been seen as reasons why a defendant might in good faith have registered a domain name incorporating someone else's mark, and the other five are indicia of bad faith intent." *Purdy*, 382 F.3d at 785.

Here, the first four factors do not necessarily indicate Defendant's good faith, and at least several of the remaining factors are indicative of Defendant's bad faith.

More specifically, Plaintiff alleges Defendant's bad faith intent to divert consumers from Plaintiff's website. Defendant operates its business through "togetherloans.com" and a "Together Loans" phone app to "redirect online customers from Plaintiff to Defendant in an illicit attempt to compete with Plaintiff." (Doc. 1-1 ¶¶ 3, 15, 28). Plaintiff also alleges that Defendant's activities have harmed the goodwill represented by Plaintiff's Marks, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source of the website. Defendant uses the Marks, or a phrase confusingly similar to the Marks, to attract and mislead consumers "into thinking that Defendant is Plaintiff[] or is associated with Plaintiff." *Id.* ¶ 32.

In particular, Count I states, "Defendant has acted with bad faith and intent to profit from the offending domain" by, among other things, "covertly, and without obtaining any permission

from Plaintiff, us[ing] the Marks, or a phrase confusingly similar to the Marks, to promote its own financial and loan services." *Id.* ¶ 37(b)). Count I also alleges that Defendant, "in an effort to evade detection for its purchase of the domain, has hidden its acquisition and ownership of the domain by using the registrar 'NameBright' to reflect that the owner name for the website has been 'redacted for privacy.'" *Id.* ¶ 37(e).

In any event, 15 U.S.C. § 1125(d)(1)(B)(i) provides only a non-exhaustive list, and the basic issue remains, pursuant to Section 1125(d)(1)(A), whether Defendant "has a bad faith intent to profit from [a] mark" and "uses a domain name that . . . is identical or confusingly similar to that mark[.]" 15 U.S.C. § 1125(d)(1)(A). Plaintiff repeatedly and specifically alleges Defendant's bad faith in using a domain name confusingly similar to Plaintiff's Marks.

The Court observes that the two domains, Plaintiff's Marks, and Defendant's allegedly unlawful mark are not the same, but they are very similar. Plaintiff's domain is "togethercu.org" and its Marks are "TOGETHER CREDIT UNION." (Doc. 1-1 ¶¶ 6–7). Defendant's domain is "togetherloans.com" and the alleged unlawful mark is "Together Loans." *Id.* ¶¶ 13, 15. At this early stage of the case, Plaintiff has sufficiently alleged that Defendant acted in bad faith by using a domain name confusingly similar to Plaintiff's Marks.

For these reasons, Defendant's Motion to Dismiss will be denied as to Count I.

## II. Count IV

In Count IV, Plaintiff alleges that Defendant, "[b]y using the Marks, or a phrase confusingly similar to the Marks, as the operative part of the offending domain and of Defendant's business and online promotions," has diluted the value of Plaintiff's Marks in violation of 15 U.S.C. § 1125(c) (Section 43(c) of the Lanham Act). (Doc. 1-1 ¶ 58).

At the outset, Section 1125(c) applies only to "famous" marks. *TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 292 F. Supp. 3d 864, 871 (N.D. Iowa 2018). "Dilution occurs when consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source." *Id.* (quoting *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999)). To succeed in a federal dilution action, a plaintiff must allege: "(1) plaintiff owns a famous and distinctive mark, (2) defendant used a diluting mark in commerce, (3) that an association arose from the similarity of the two marks, and (4) that the association harms the reputation of or impairs the distinctiveness of the famous mark." *Id.*

> [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> > (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> >
> > (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> >
> > (iii) The extent of actual recognition of the mark.
> >
> > (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A). "[T]he nature of a dilution claim itself makes it difficult to 'state a claim to relief that is plausible on its face.' . . . The fame element is purposely rigorous because section 1125(c) is intended to protect a very specific type of trademark and trade dress." *TrueNorth Cos.*, 292 F. Supp. 3d at 873 (internal citations omitted). "[A] mark must be famous beyond a niche market." *Id.* at 872 (citing *Top Tobacco, L.P. v. N. Atl. Operating Co.*, 509 F.3d 380, 384 (7th Cir. 2007)).

Here, Plaintiff fails to demonstrate its Marks are famous for dilution purposes. First, Plaintiff does not sufficiently demonstrate "[t]he duration, extent, and geographic reach of

advertising and publicity of the mark . . . ." 15 U.S.C. § 1125(c)(2)(A)(i). Plaintiff alleges it obtained the Marks in 2020, is a credit union with "branches throughout the St. Louis area and nationwide," and "has invested large sums of money in promoting its business with the Marks via nationwide campaigns, especially in the online marketplace, that have spanned many years." (Doc. 1-1 ¶¶ 6, 9). It does not further demonstrate its geographic reach or the duration of its advertising and publicity. *See TrueNorth Cos.*, 292 F. Supp. 3d at 873 (citing *VISA Int'l Servs. Ass'n v. JSL Corp.*, 590 F. Supp. 2d 1306, 1315 (D. Nev. 2008) (finding plaintiff's statement that it established a brand in 2001 and has invested "$30 million in marketing efforts to strengthen [its] brand both locally and nationally" insufficient to satisfy the first factor)). As in *TrueNorth*, Plaintiff states only in conclusory terms that it operates nationally and has "invested large sums of money" for nationwide campaigns. (Doc. 1-1 ¶¶ 6, 9). Thus, the first of the four factors is not satisfied.

Second, Plaintiff does not allege "[t]he amount, volume, and geographic extent of sales of goods or services offered under the [Marks]." 15 U.S.C. § 1125(c)(2)(A)(ii). Plaintiff alleges it is "engaged in the business of providing credit union banking and financial services" and "has used the Marks continuously and publicly to promote and sell its services" while investing "large sums of money." (Doc. 1-1 ¶¶ 6, 9). It, again, provides no further detail regarding the amount, volume, and geographic extent of its services under the Marks. *See TrueNorth Cos.*, 292 F. Supp. 3d at 874 (citing *VISA Int'l Servs. Ass'n*, 590 F. Supp. 2d at 1315) (finding plaintiff failed to satisfy second factor because it did not allege a specific amount or volume of sales under its mark). Thus, Plaintiff fails to satisfy the second factor.

Third, Plaintiff does not allege the "extent of actual recognition" of the Marks. 15 U.S.C. § 1125(c)(2)(A)(iii). Plaintiff states, without elaboration, that it "has built up substantial goodwill among consumers in its various markets . . . ." (Doc. 1-1 ¶ 26). Plaintiff does not indicate how widely the Marks are recognized, nor does it attempt to elaborate on "substantial goodwill" or "various markets." Thus, the third factor is not satisfied.

Fourth, while Plaintiff does allege the Marks are federally registered, *id.* ¶¶ 8, 10, 37, the fourth factor "alone is insufficient to establish plausibility as to" the Marks' fame for dilution purposes. *TrueNorth Cos.*, 292 F. Supp. 3d at 874.

Taking into account these four factors and Plaintiff's allegations in their entirety, Plaintiff's Count IV altogether fails to meet the "purposely rigorous" fame element "intended to protect a very specific type of trademark and trade dress." *TrueNorth Cos.*, 292 F. Supp. 3d at 873.

Accordingly, Plaintiff's federal dilution claim in Count IV will be dismissed.

## III. Count V

In Count V, Plaintiff alleges trademark infringement under Missouri Revised Statutes Section 417.056. (Doc. 1-1 ¶¶ 60–63). That statute provides that "any person who shall":

> Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under sections 417.005 to 417.066 in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services . . . . shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in section 417.061 . . . .

Mo. Rev. Stat. § 417.056.

Plaintiff's Petition claims that Plaintiff has "been damaged by Defendant's infringement of the Marks" that are "federally registered" with the United States Patent and Trademark Office.

(Doc. 1-1 ¶¶ 8, 10, 37, 63). Plaintiff misses the mark. According to the plain language of Section 417.056, a violation requires the Marks to be registered under Missouri, not federal, statute. *See* Mo. Rev. Stat. § 417.056 (referring to "a mark registered under sections 417.005 to 417.066"). Nowhere in its Petition does Plaintiff allege its Marks are registered under Missouri statute.

Thus, Count V must be dismissed.

**IV. Count VI**

In Count VI, Plaintiff alleges Defendant is liable for trademark dilution under Missouri Revised Statutes Section 417.061. (Doc. 1-1 ¶¶ 64–66). Section 417.061 provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under sections 417.005 to 417.066, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Mo. Rev. Stat. § 417.061.

"To prevail under the statute, [a plaintiff] 'must show its mark or trademark was valid at common law, that its mark is distinctive, and that defendants' use of its name created a likelihood of dilution of the distinctive quality of plaintiff's mark.'" *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 769 (8th Cir. 2010) (quoting *Cmty. of Christ Copyright Corp. v. Devon Park Restoration*, 683 F. Supp. 2d 1006, 1017 (W.D. Mo. 2010)).

In its Motion to Dismiss, Defendant does not dispute that Plaintiff's Marks are valid at common law; Defendant argues that Plaintiff cannot proceed under Section 417.061 because the Marks are not registered in Missouri. (Doc. 10 at 9–10). But "[a] simple reading of the statute . . . clearly indicates that registration in Missouri is not required" and Plaintiff may proceed if the Marks are "valid at common law." *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F. Supp. 990, 1000 (W.D. Mo. 1986).

Thus, Defendant's Motion to Dismiss will be denied as to Count VI.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 9) as to Counts IV and V is **GRANTED**. Counts IV and V are dismissed.

**IT IS FINALLY ORDERED** that Defendant's Motion to Dismiss (Doc. 9) as to Counts I and VI is **DENIED**.

So ordered this 14th day of September 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE